**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
MARIE A. MCCRARY (State Bar No. 262670)
HAYLEY REYNOLDS (State Bar No. 306427)
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL PASCHOAL, LISA CHONG, and ADINA RINGLER as individuals, on behalf of themselves, the general public and those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CAMPBELL SOUP COMPANY and SUN-MAID GROWERS OF CALIFORNIA, <br><br> Defendants. | CASE NO. <br><br> **CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; FALSE ADVERTISING; FRAUD, DECEIT, AND/OR MISREPRESENTATION; UNFAIR BUSINESS PRACTICES; AND UNJUST ENRICHMENT** <br><br> JURY TRIAL DEMANDED |

**INTRODUCTION**

1.      Plaintiffs Rafael Paschoal, Lisa Chong, and Adina Ringler by and through their counsel, bring this class action against Defendants Campbell Soup Company and Sun-Maid Growers of California (collectively, "Defendants"), to seek redress for Defendants' deceptive and unlawful practices in labeling and marketing the Plum Organics brand baby and toddler food products.

2.      Parents are increasingly aware of the need to provide healthy food for their children, especially at the critical age of less than 2 years old. To make healthy food choices for their children, parents rely on nutritional information on food product labels.

3.      Intending to profit from parents' increasing desire to purchase healthy food for their young children, Defendants misbrand their baby and toddler food products by making nutrient content claims on the product packages that are strictly prohibited by the Food and Drug Administration ("FDA"), and by misleading purchasers into believing that their products are healthier than other products for children under two years of age in order to induce parents into purchasing Defendants' products.

4.      Defendant's misbranding caused Plaintiffs and members of the class to pay a price premium for the products.

**PARTIES**

5.      Rafael Paschoal is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Berkeley, California.

6.      Lisa Chong is, and at all times alleged in this Class Action Complaint was, an individual and a resident of San Francisco, California.

7.      Adina Ringler is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Los Angeles, California.

8.      Defendant Sun-Maid Growers of California is a corporation existing under the laws of the State of California, having its principal place of business in Fresno, California.

9.      Defendant Campbell Soup Company is a corporation existing under the laws of the State of New Jersey, having its principal place of business in Camden, New Jersey.

**JURISDICTION AND VENUE**

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and Plaintiffs and at least one Defendant are citizens of different states.

11.     The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendants within, affecting, and emanating from, the State of California. Defendants regularly conduct and/or solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from products provided to persons in the State of California. Defendants have engaged, and continue to engage, in substantial and continuous business practices in the State of California.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the state of California, including within this District.

13.     In accordance with California Civil Code Section 1780(d), Plaintiffs concurrently file herewith declarations establishing that, at various times throughout the class period, Mr. Paschoal purchased Plum Organics products in and around Berkeley, California. Mr. Paschoal's declaration is attached hereto as Exhibit B.

14.     Plaintiffs accordingly allege that jurisdiction and venue are proper in this Court.

**SUBSTANTIVE ALLEGATIONS**

15.     Defendants manufacture, distribute, market, advertise, and sell a variety of baby and toddler food products under the brand name "Plum Organics."[1] Many of these products have packaging that predominately, uniformly, and consistently make nutrient content claims on the principal display panel of the product labels (the "Products"). A non-exhaustive list of the Products and the express and implied nutrient content claims made on the product packages is attached hereto as Exhibit A.

---

[1] Campbell Soup Company acquired the Plum Organics brand on or around May 2013. On or around March 2021, Sun-Maid Growers of California acquired the Plum Organics brand from Campbell Soup Company.

16.     The Products are intended for children under the age of two. Many of the Products are baby food "pouches." These pouches contain pureed baby food that were introduced to the market over a decade ago, and as of 2018, accounted for 25 percent of baby food sales in the United States.[2]

17.     FDA regulations explicitly prohibit certain nutrient content claims on foods intended for children under the age of two. 21 C.F.R. § 101.13(b)(3).

18.     An ever-growing industry, there is seemingly no limit to the combination of foods that can go into baby food pouches, as evidenced by the wide array of flavors of the Products. Looking for a way to differentiate itself in the growing market, Defendants have turned to making nutrient content claims on the front of their Product labels.

19.     For example, Defendants have a line of baby food pouches called "Mighty Protein & Fiber," that states on the front label "3g Protein;" "4g Fiber;" and "200mg Omega-3 ALA from Chia." An exemplar is shown below.



---

[2] https://www.nytimes.com/2018/06/19/well/rethinking-baby-food-pouches.html

1

2

3

4

5

6          20.     Another line of pouches called "Super Smoothie Nutrient-Dense Blend" states on the front label "Nutrient-Dense Blend," "4g Fiber;" "100mg Omega-3 ALA from Chia;" and "7 Essential Nutrients." The back of the pouch claims, "We developed the Super Smoothie to fuel your little one . . . with a nutritious blend of fruits and veggies," and further states "Exposure to key nutrients in the first 1000 days is critical for a child's development." An exemplar of the front and back product labels is shown below.

7

8

9

10

11

12

13

14

15

16

17

18

 

19

20         21.     As described in detail below, Defendants' advertising and labeling of the Products with express and implied nutrient content claims is unlawful, misleading, deceptive, and intended to induce consumers to purchase the Products at a premium price. These claims deceive and mislead reasonable consumers into believing that the Products will provide more benefits than their competitors, and induces parents to purchase the Products despite a lack of evidence that an increased intake for the nutrients advertised are appropriate or recommended for infants and toddlers less than 2 years of age.

21

22

23

24

25

26

27

28

**Federal and State Regulations Governing Food Labeling**

22.     The Food and Drug Administration regulates nutrition content labeling. According to these regulations, "no nutrient content claims may be made on food intended specifically for use by infants and children less than 2 years of age," subject to certain exceptions not applicable here. 21 C.F.R. § 101.13(b)(3).

23.     According to the regulations, nutrient content claims can be expressed or implied. 21 C.F.R. § 101.13(b)(1), 21 C.F.R. § 101.13(b)(2).

24.     An express nutrient content claim is "any direct statement about the level (or range) of a nutrient in the food." 21 C.F.R. § 101.13(b)(1). Further, where information that is required or permitted to be "declared in nutrition labeling, and that appears as part of the nutrition label . . . is declared elsewhere on the label or in labeling, it is a nutrient content claim and is subject to the requirements for nutrient content claims." 21 C.F.R. § 101.13(c).

25.     An implied nutrient content claim "suggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient." 21 C.F.R. 1013(b)(2)(ii).

26.     Identical federal and California laws regulate the content of labels on packaged food and require truthful, accurate information on the labels of packaged foods. The requirements of the federal Food, Drug & Cosmetic Act ("FDCA"), and its labeling regulations, including those set forth in 21 C.F.R. § 101, were adopted by the California legislature in the Sherman Food Drug & Cosmetic Law (the "Sherman Law"). California Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state."). The federal laws and regulations discussed herein are applicable nationwide to all sales of packaged food products. Additionally, no state imposes different requirements on labeling of packaged food for sale in the United States.

27.     Under the FDCA, the term "misleading" covers labels that are technically true, but are likely to deceive consumers. Under the FDCA, if any single representation on the labeling is

misleading, the entire food is misbranded, and no other statement in the labeling can cure a misleading statement.

28.     Further in addition to its blanket adoption of federal labeling requirements, California has also enacted a number of laws and regulations that adopt and incorporate specific numerated federal food laws and regulations. *See* California Health & Safety Code § 110660 (misbranded if label is misleading).

29.     Under California law, a food product that is "misbranded" cannot legally be manufactured, advertised, distributed, sold, or possessed. Misbranded products have no economic value and are legally worthless.

30.     Representing that the Products will provide certain health benefits by making unlawful nutrient content claims as Defendants' labels do is prohibited by the aforementioned misbranding laws and regulations.

31.     The regulations relating to nutrient content claims discussed herein are intended to ensure that consumers are not misled as to the actual or relative levels of nutrients in food products.

**Defendants' Marketing and Labeling of the Products Violates State and Federal Food Labeling Laws**

32.     The Products are unlawful, misbranded, and violate the Sherman Law, California Health & Safety Code § 110660, *et seq.*, because the Products are intended for children less than 2 years of age and the Products' labels contain express and implied nutrient content claims.

33.     The Products at issue in this case are intended for children 6 months and up.

34.     According to Defendant Plum, Inc.'s website, its "food philosophy" is that "[f]rom pregnancy on through the first two years, food helps spark baby's growth, eating preferences and overall development."[3]

35.     Some of the Products are labeled as being for children 6 months and up while others are labeled "tots," with no other indication of what age constitutes a "tot." The Mighty Morning Bar it labeled as "tots" and "15 months and up." However, like many other parents,

_____

[3] https://www.plumorganics.com/resource-category/food-philosophy/

Plaintiffs purchased the Products for their children when their children were approximately 6 months of age regardless of whether they were labeled for a 6-month-old or for a "tot."

36. Further, the Products are in the "Baby Food" grocery store aisles, alongside similar pureed pouch products and "puffs" marketed for a baby's first "finger foods." Defendants misbrand their Products by making nutrient content claims that are strictly prohibited by the FDA, and by misleading purchasers into believing that their products are healthier in order to induce parents into purchasing their products.

37. All the Product labels contain impermissible express nutrient content claims. As shown in Exhibit A, the Product labels prominently state the grams of protein, grams of fiber, and/or milligrams of omega-3s on the front of the package. The grams of protein and fiber appear in the nutrition facts panel and are therefore nutrient content claims when stated elsewhere on the label. 21 C.F.R. § 101.13(c). The statement of the presence of other nutrients are also express nutrient content claims.

38. Some of the Product labels also contain impermissible implied nutrient content claims. For example, the Super Smoothie Products also claim to be a "Nutrient-Dense Blend" alongside express nutrient content claims such as "4g Fiber" and "100mg Omega-3 ALA from Chia."

39. Foods intended for children less than two are prohibited from making such nutrient content claims. Therefore, the Products are accordingly misbranded.

40. Defendants' marketing, advertising, and sale of the Products violates the false advertising provisions of the Sherman Law (California Health & Safety Code § 110390, *et. seq.*), including but not limited to:

    a. Section 110390, which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product;

    b. Section 110395, which makes it unlawful to manufacture, sell, deliver, hold, or offer to sell any falsely or misleadingly advertised food; and

c.  Sections 110398 and 110400, which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised.

41.  Defendants' marketing, advertising, and sale of the Products violates the misbranding provisions of the Sherman Law (California Health & Safety Code § 110660, *et. seq.*), including but not limited to:

a.  Section 110665 (a food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in 21 U.S.C. Sec. 343(q));

b.  Section 110760, which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded;

c.  Section 110765, which makes it unlawful for any person to misbrand any food; and

d.  Section 110770, which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.

42.  Defendants have violated 21 U.S.C. § 343(a), and the standards set by FDA regulations, including but not limited to 21 C.F.R. §§ 101.13(b), 101.13(c), which have been incorporated by reference in the Sherman Law, by including impermissible nutrient content claims on the labels of foods intended for children less than 2 years of age.

43.  A reasonable consumer would rely on the label claims to purchase the product. For example, a reasonable consumer would believe that because the Defendants labeled their Products as containing certain nutrients and as being nutritious, that the Products were superior to other similar products that do not make the impermissible claims. A reasonable consumer would also believe that the Product label's inclusion of the nutrient content claims means that an increased intake of those nutrients would be beneficial for his or her child.

44.  Defendants intend for and know that consumers will and do rely upon food labeling statements in making their purchasing decisions. Label claims and other forms of advertising and marketing drive product sales, particularly if placed prominently on the front of product packaging, as Defendants have done on the Product labels.

45.    Because consumers pay a price premium for Products that have a nutrient content claim, by labeling their Products as providing nutritional value, Defendants are able to both increase their sales and retain more profits.

46.    Defendants engaged in the practices complained of herein to further their private interests of: (i) increasing sales of their Products while decreasing the sales of competitors' products that do not make unlawful nutrient content claims, and/or (ii) commanding a higher price for their Products because consumers will pay more for the Products due to consumers' demand for healthful products for their children.

47.    The market for baby food pouch products continues to grow, and because Defendants know consumers rely on the nutrient content claims on the Product labels, Defendants have an incentive to continue to make such misleading and unlawful representations.

48.    Defendants continue to launch new product lines with nutrient content claims to maintain their competitive edge, making it likely that Defendants will continue to misleadingly advertise its Products.

### PLAINTIFFS' EXPERIENCE

**Rafael Paschoal**

49.    Mr. Paschoal purchased several Plum Organics baby food pouches for his children starting when they were approximately 6 months of age, including each of the following varieties: Plum Organics Mighty 4 Strawberry, Banana, Greek Yogurt, Kale, Amaranth and Oat Baby Food Pouches; Plum Organics Mighty Veggie Spinach, Grape, Apple, and Amaranth Baby Food Pouches; and Plum Organics Mighty Veggie Zucchini, Apple, Watermelon, and Barley Baby Food Pouches. Mr. Paschoal purchased the products from Amazon and grocery stores in Berkeley, California.

50.    Mr. Paschoal made each of his purchases after reading the nutrient content claims on the product labels, including, for example, "3g Protein," "2g Fiber," and "100mg Omega-3 ALA from Chia," on the front label of the Plum Organics Mighty 4, Strawberry, Banana, Greek Yogurt, Kale, Amaranth and Oat baby food pouch. He purchased the Products instead of other products, because he believed the Products to be superior in providing nutrition for his children.

-9-

51.     As a result of Defendants' unlawful nutrient content claims, the Products have no, or at a minimum, a much lower value to Mr. Paschoal.

52.     Mr. Paschoal not only purchased the Products because the labels contained nutrient content claims, but he also paid more money for the Products than he would have paid if the Products did not contain nutrient content claims.

53.     Had Defendants not unlawfully and misleadingly labeled their Products, Mr. Paschoal would not have purchased them or, at a very minimum, he would have paid less for the Products.

54.     Mr. Paschoal continues to desire to purchase baby and toddler food products, including those marketed and sold by Defendants. If the Products did not contain unlawful and misleading labels, Plaintiffs would likely purchase the Products again in the future. Mr. Paschoal regularly visits stores where the Products and other baby and toddler food products are sold.

**Lisa Chong**

55.     Ms. Chong purchased several Plum Organics baby food pouches for her child starting when he was approximately 6 months of age, including each of the following varieties:
- Stage 3 Carrot, Spinach, Turkey, Corn, Apple & Potato Baby Food Pouch
- Stage 3 Carrot, Sweet Potato, Corn, Pea, & Chicken Baby Food Pouch
- Super Puffs Strawberry & Beet
- Super Puffs Blueberry & Purple Sweet Potato
- Super Puffs Mango & Sweet Potato
- Mighty Protein & Fiber Banana, White Bean, Strawberry, & Chia Baby Food Pouch
- Mighty Protein & Fiber Pear, White Bean, Blueberry, Date & Chia Baby Food Pouch
- Mighty Protein & Fiber Banana, White Bean, Sunflower Seed Butter & Chia Baby Food Pouch
- Mighty Veggie Sweet Potato, Apple, Banana, Carrot Baby Food Pouch
- Mighty Veggie Spinach, Grape, Apple & Amaranth Baby Food Pouch
- Mighty Veggie Carrot, Pear, Pomegranate & Oats Baby Food Pouch
- Mighty 4 Mango & Pineapple, White Bean, Butternut Squash, Oats Baby Food Pouch
- Mighty 4 Sweet Potato, Bana & Passion Fruit, Greek Yogurt & Oats Baby Food Pouch
- Mighty 4 Strawberry Banana, Greek Yogurt, Kale, Oat & Amaranth Baby Food Pouch
- Mighty 4 Banana, Blueberry, Sweet Potato, Carrot, Greek Yogurt & Millet Baby Food Pouch

- Mighty Morning Banana, Blueberry, Oat & Quinoa Baby Food Pouch
- Super Smoothie Nutrient-Dense Blend Pear, Sweet Potato, Spinach, Blueberry, Bean & Oat
- Super Smoothie Nutrition Blend Apple, Carrot & Spinach with Beans & Oats

56.     She purchased the Products from Safeway, Target, and Buy Buy Baby stores in Daly City and Colma, California from approximately June 2019-June 2020 for her child who was under the age of two years old.

57.     Ms. Chong made each of her purchases after reading the nutrient content claims on the product labels, including, for example, "3g Protein," "4g Fiber," and "200mg Omega-3 ALA from Chia" on the Mighty Protein & Fiber Pear, White Bean, Blueberry, Date & Chia Baby Food Pouch; "2g Protein," "2g Fiber," and "100mg Omega3 ALA from Chia," on the Mighty 4 Banana, Blueberry, Sweet Potato, Carrot, Greek Yogurt & Millet Baby Food Pouch; and "2g Protein," and "2g Fiber," on the Mighty Morning Banana, Blueberry, Oat, Quinoa Baby Food Pouches. She purchased the Products instead of other products, because she believed the Products to be superior in providing nutrition for her child.

58.     As a result of Defendants' unlawful nutrient content claims, the Products have no, or at a minimum, a much lower value to Ms. Chong.

59.     Ms. Chong not only purchased the Products because the labels contained nutrient content claims, but she also paid more money for the Products than she would have paid for them if they did not contain nutrient content claims.

60.     Had Defendants not unlawfully and misleadingly labeled their Products, Ms. Chong would not have purchased them or, at a very minimum, she would have paid less for the Products.

61.     Ms. Chong continues to desire to purchase baby and toddler food products, including those marketed and sold by Defendants. If the Products did not contain deceptive and misleading labels, Plaintiffs would likely purchase the Products again in the future. Ms. Chong regularly visits stores where the Products and other baby and toddler food products are sold.

**Adina Ringler**

62.     Ms. Ringler purchased several Plum Organics baby food pouches for her child starting when her child was approximately 6 months of age, including each of the following varieties: Mighty Protein & Fiber Pear White Bean Blueberry Date & Chia Baby Food Pouch; Mighty 4 Organic Banana Blueberry Sweet Potato Carrot Greek Yogurt & Millet Baby Food Pouch; and Mighty Morning Banana Blueberry Oat Quinoa Baby Food Pouch. She purchased the products from Walmart in Porter Ranch, CA; Target in Granada Hills, CA; and Walmart and Target in Los Angeles, CA.

63.     Ms. Ringler made each of her purchases after reading the nutrient content claims on the product labels, including, for example, "3g Protein," "4g Fiber," and "200mg Omega-3 ALA from Chia" on the Mighty Protein & Fiber Pear, White Bean, Blueberry, Date & Chia Baby Food Pouch; "2g Protein," "2g Fiber," and "100mg Omega3 ALA from Chia," on the Mighty 4 Banana, Blueberry, Sweet Potato, Carrot, Greek Yogurt & Millet Baby Food Pouch; and "2g Protein," and "2g Fiber," on the Mighty Morning Banana, Blueberry, Oat, Quinoa Baby Food Pouches. She purchased the Products instead of other products, because she believed the Products to be superior in providing nutrition for her child.

64.     As a result of Defendants' unlawful nutrient content claims, the Products have no, or at a minimum, a much lower value to Ms. Ringler.

65.     Ms. Ringler not only purchased the Products because the labels contained nutrient content claims, but she also paid more money for the Products than she would have paid for them if they did not contain nutrient content claims.

66.     Had Defendants not unlawfully and misleadingly labeled their Products, Ms. Ringler would not have purchased them or, at a very minimum, she would have paid less for the Products.

67.     Ms. Ringler continues to desire to purchase pouch products, including those marketed and sold by Defendants. If the Products did not contain deceptive and misleading labels, Plaintiffs would likely purchase the Products again in the future. Ms. Ringler regularly visits stores where the Products and other baby food pouch products are sold.

68.     Plaintiffs and members of the Class have been economically damaged by their purchase of the Products because the advertising for the Products was and is misleading under California law and the products are misbranded; therefore, the Products are worth less than what Plaintiffs and members of the Class paid for them.

## CLASS ALLEGATIONS

69.     Plaintiffs bring this class action lawsuit on behalf of themselves and a proposed class of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiffs seek to represent the following group of similarly situated persons, defined as follows:

> Nationwide Class: All persons in the United States who purchased the Products between May 27, 2017 and the present.

> California Subclass: All persons in the State of California who purchased the Products between May 27, 2017 and the present.

70.     This action has been brought and may properly be maintained as a class action against Defendants because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

71.     Numerosity: Plaintiffs do not know the exact size the Class, but they estimate that it is composed of more than 100 persons. The persons in the Class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

72.     Common Questions Predominate: This action involves common questions of law and fact to the Class because each class member's claim derives from the deceptive, unlawful and/or unfair statements and omissions that led them to rely on the unlawful nutrient content claims on the Product labels. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover. The questions of law and fact common to the Class are:

> a.   Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive and/or unlawful;

> b.   Whether Defendants' actions violate Federal and California laws invoked herein;

-13-

c.   Whether labeling the Products with unlawful nutrient content claims causes the Products to command a price premium in the market as compared with similar products that do not make such unlawful claims;

d.   Whether Defendants' advertising and marketing regarding the Products was likely to deceive reasonable consumers;

e.   Whether representations regarding the nutrient content of the Products are material to a reasonable consumer;

f.   Whether Defendants engaged in the behavior knowingly, recklessly, or negligently;

g.   The amount of profits and revenues earned by Defendants as a result of the conduct;

h.   Whether class members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief; and

i.   Whether class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

73.   Typicality: Plaintiffs' claims are typical of the claims of the other members of the Class because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendants in violation of law as complained of herein. Further, the damages of each member of the Class were caused directly by Defendants' wrongful conduct in violation of the law as alleged herein.

74.   Adequacy of Representation: Plaintiffs will fairly and adequately protect the interests of all class members because it is in their best interests to prosecute the claims alleged herein to obtain full compensation due to them for the unfair and illegal conduct of which they complain. Plaintiffs also have no interests that are in conflict with, or antagonistic to, the interests of class members. Plaintiffs have retained highly competent and experienced class action attorneys to represent her interests and that of the class. By prevailing on their own claims, Plaintiffs will establish Defendants' liability to all class members. Plaintiffs and their counsel

have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

75.     Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the classes will tend to establish inconsistent standards of conduct for Defendants and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the classes may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

76.     Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

<u>**CAUSES OF ACTION**</u>

Plaintiffs do not plead, and hereby disclaims, causes of action under the FDCA and regulations promulgated thereunder by the FDA. Plaintiffs rely on the FDCA and FDA regulations only to the extent such laws and regulations have been separately enacted as state law or regulation or provide a predicate basis of liability under the state and common laws cited in the following causes of action.

<u>**PLAINTIFFS' FIRST CAUSE OF ACTION**</u>

**(Violation of the Consumers Legal Remedies Act (the "CLRA"), California Civil Code § 1750, *et seq.*)**
**On Behalf of Plaintiffs and the California Subclass**

77.     Plaintiffs reallege and incorporate the paragraphs of this Class Action Complaint as if set forth herein.

78.     Defendants' actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

79.     Plaintiffs and other subclass members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

80.     The Products that Plaintiffs (and other similarly situated subclass members) purchased from Defendants were "goods" within the meaning of California Civil Code § 1761(a).

81.     Defendants' acts and practices, set forth in this Class Action Complaint, led customers to falsely believe that the Products were superior to other products and would provide increased nutritional value for their babies. By engaging in the actions, representations and conduct set forth in this Class Action Complaint, Defendants have violated, and continue to violate, § 1770(a)(2), § 1770(a)(5), § 1770(a)(7), and § 1770(a)(8) of the CLRA. In violation of California Civil Code §1770(a)(2), Defendants' acts and practices constitute improper representations regarding the source, sponsorship, approval, or certification of the goods they sold. In violation of California Civil Code §1770(a)(5), Defendants' acts and practices constitute improper representations that the goods they sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have. In violation of California Civil Code §1770(a)(7), Defendants' acts and practices constitute improper representations that the goods it sells are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code §1770(a)(8), Defendants have disparaged the goods, services, or business of another by false or misleading representation of fact.

82.     Plaintiffs request that this Court enjoin Defendants from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendants are not restrained from engaging in these types of practices in the future, Plaintiffs and the other members of the subclass will continue to suffer harm. Plaintiffs and those similarly situated have no adequate remedy at law to stop Defendants' continuing practices.

83.     Plaintiffs provided Defendants with notice and demand that Defendants correct,

repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. Despite receiving the aforementioned notice and demand, Defendants failed to do so in that, among other things, they failed to identify similarly situated customers, notify them of their right to correction, repair, replacement or other remedy, and/or to provide that remedy. Accordingly, Plaintiffs seek, pursuant to California Civil Code § 1780(a)(3), on behalf of themselves and those similarly situated class members, compensatory damages, punitive damages and restitution of any ill-gotten gains due to Defendants' acts and practices.

84.     Plaintiffs also request that this Court award their costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

**PLAINTIFFS' SECOND CAUSE OF ACTION**
**(False Advertising, Business and Professions Code § 17500, *et seq.* ("FAL"))**
**On Behalf of Plaintiffs and the California Subclass**

85.     Plaintiffs realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

86.     Beginning at an exact date unknown to Plaintiffs, but within three (3) years preceding the filing of the Class Action Complaint, Defendants made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the Products.

87.     Defendants made representations and statements (by omission and commission) that led reasonable customers to believe that the Products that they were purchasing were superior to competitor products that did not contain unlawful nutrient content claims.  Defendants' representations similarly led reasonable consumers to believe that the Product provided nutrients at levels that would be beneficial for their children.

88.     Plaintiffs and those similarly situated relied to their detriment on Defendants' misleading and deceptive advertising and marketing practices, including each of the unlawful claims set forth above. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, refraining from purchasing the Products or paying less for them.

89.     Defendants' acts and omissions are likely to deceive the general public.

90.     Defendants engaged in these false, misleading and deceptive advertising and

marketing practices to increase their profits. Accordingly, Defendants have engaged in false advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and Professions Code.

91. The aforementioned practices, which Defendants used, and continue to use, to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

92. As a direct and proximate result of such actions, Plaintiffs and the other subclass members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

93. Plaintiffs seek, on behalf of themselves and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from Plaintiffs, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon. Plaintiffs and those similarly situated lack any adequate remedy at law to obtain this restitution.

94. Plaintiffs seek, on behalf of themselves and those similarly situated, a declaration that the above-described practices constitute false, misleading and deceptive advertising.

95. Plaintiffs seek, on behalf of themselves and those similarly situated, an injunction to prohibit Defendants from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which they are not entitled. Plaintiffs, those similarly situated and/or other California consumers have no other adequate remedy at law to ensure future compliance with the California Business and Professions

1 Code alleged to have been violated herein.

2 **PLAINTIFFS' THIRD CAUSE OF ACTION**
**(Common Law Fraud, Deceit and/or Misrepresentation)**
3 **On Behalf of Plaintiffs and the Class**

4 96.     Plaintiffs realleges and incorporates by reference the paragraphs of this Class

5 Action Complaint as if set forth herein.

6 97.     Defendants have fraudulently and deceptively included unlawful nutrient content

7 claims on the Product labels.

8 98.     The unlawfulness of the claims were known exclusively to, and actively concealed

9 by, Defendants, not reasonably known to Plaintiffs, and material at the time they were made.

10 Defendants' unlawful statements concerned material facts that were essential to the analysis

11 undertaken by Plaintiffs as to whether to purchase the Products. In misleading Plaintiffs and not

12 so informing them, Defendants breached their duty to Plaintiffs. Defendants also gained

13 financially from, and as a result of, their breach.

14 99.     Plaintiffs and those similarly situated relied to their detriment on Defendants'

15 unlawful representations. Had Plaintiffs and those similarly situated been adequately informed

16 and not intentionally deceived by Defendants, they would have acted differently by, without

17 limitation: (i) declining to purchase the Products, (ii) purchasing less of them, or (iii) paying less

18 for the Products.

19 100.     By and through such fraud, deceit, and unlawful representations, Defendants

20 intended to induce Plaintiffs and those similarly situated to alter their position to their detriment.

21 Specifically, Defendants fraudulently and deceptively induced Plaintiffs and those similarly

22 situated to, without limitation, purchase the Products.

23 101.     Plaintiffs and those similarly situated justifiably and reasonably relied on

24 Defendants' unlawful representations, and, accordingly, were damaged by Defendants.

25 102.     As a direct and proximate result of Defendants' unlawful representations, Plaintiffs

26 and those similarly situated have suffered damages, including, without limitation, the amount they

27 paid for the Products.

28 103.     Defendants' conduct as described herein was wilful and malicious and was

designed to maximize Defendants' profits even though Defendants knew that it would cause loss and harm to Plaintiffs and those similarly situated.

### PLAINTIFFS' FOURTH CAUSE OF ACTION
**(Unlawful, unfair, and fraudulent trade practices violation of Business and Professions Code § 17200, *et seq.*)**
**On Behalf of Plaintiffs and the California Subclass**

104.    Plaintiffs realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

105.    Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unlawful, unfair, and fraudulent trade practices in California by engaging in the unlawful, unfair, and fraudulent business practices outlined in this complaint.

106.    In particular, Defendants have engaged, and continue to engage, in unlawful practices by, without limitation, violating the following state and federal laws: (i) the CLRA as described herein; (ii) the FAL as described herein; (iii) the advertising provisions of the Sherman Law (Article 3), including without limitation, California Health & Safety Code §§ 110390, 110395, 110398 and 110400; (iv) the misbranded food provisions of the Sherman Law (Article 6), including without limitation, California Health & Safety Code §§ 110665, 110760, 110765, and 110770; and (v) and federal laws regulating the advertising and branding of food in 21 U.S.C. § 343, *et seq.* and FDA regulations, including but not limited to 21 C.F.R. 21 C.F.R. §§ 101.13(b), which are incorporated into the Sherman Law (California Health & Safety Code §§ 110100(a), 110380, and 110505).

107.    In particular, Defendants have engaged, and continue to engage, in unfair and fraudulent practices by, without limitation, the following: including unlawful nutrient content claims on the Product labels and thereby selling Products that were not capable of being sold or held legally and which were legally worthless.

108.    Plaintiffs and those similarly situated relied to their detriment on Defendants' unlawful, unfair, and fraudulent business practices. Had Plaintiffs and those similarly situated been adequately informed and not deceived by Defendants, they would have acted differently by,

without limitation: (i) declining to purchase the Products, (ii) purchasing less of the Products, or (iii) paying less for the Products.

109.    Defendants' acts and omissions are likely to deceive the general public.

110.    Defendants engaged in these deceptive and unlawful practices to increase their profits. Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by section 17200, *et seq.* of the California Business and Professions Code.

111.    The aforementioned practices, which Defendants have used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

112.    As a direct and proximate result of such actions, Plaintiffs and the other subclass members, have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and the subclass members lost the amount they paid for the Products.

113.    As a direct and proximate result of such actions, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

114.    Plaintiffs seek, on behalf of themselves and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from Plaintiffs, the general public, or those similarly situated by means of the deceptive and/or unlawful trade practices complained of herein, plus interest thereon. Plaintiffs and those similarly situated lack any adequate remedy at law to obtain this restitution.

115.    Plaintiffs seek, on behalf of themselves and those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

116.    Plaintiffs seek, on behalf of themselves and those similarly situated, an injunction to prohibit Defendants from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Defendants, unless and until enjoined and restrained

by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which they were not entitled. Plaintiffs, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

### PLAINTIFFS' FIFTH CAUSE OF ACTION
**(Unjust Enrichment)**
**On Behalf of Plaintiffs and the Class**

117.   Plaintiffs reallege and incorporate by reference all paragraphs alleged herein

118.   Plaintiffs and members of the Class members conferred a benefit on the Defendants by purchasing the Products

119.   Defendants have been unjustly enriched in retaining the revenues from Plaintiffs' and Class Members' purchases of the Products, which retention is unjust and inequitable, because Defendants sold Products that were not capable of being sold or held legally and which were legally worthless. Plaintiffs paid a premium price for the Products.

120.   Because Defendants' retention of the non-gratuitous benefit conferred on them by Plaintiffs and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the Class members for its unjust enrichment, as ordered by the Court. Plaintiffs and those similarly situated have no adequate remedy at law to obtain this restitution.

121.    Plaintiffs, therefore, seek an order requiring Defendants to make restitution to them and other members of the Class.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and those similarly situated, respectfully request that the Court enter judgement against Defendants as follows:

A.   Certification of the proposed Class, including appointment of Plaintiffs' counsel as class counsel;

B.   An order temporarily and permanently enjoining Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.   An award of compensatory damages in an amount to be determined at trial, except as to those causes of action where compensatory damages are not available as a matter of law;

D.   An award of statutory damages in an amount to be determined at trial, except as to those causes of action where statutory damages are not available as a matter of law;

E.   An award of punitive damages in an amount to be determined at trial, except as to those causes of action where punitive damages are not available as a matter of law;

F.   An award of treble damages, except as to those causes of action where treble damages are not available as a matter of law;

G.   An award of restitution in an amount to be determined at trial;

H.   An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

I.   For reasonable attorney's fees and the costs of suit incurred; and

J.   For such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

///

Dated:  September 10, 2021                **GUTRIDE SAFIER LLP**

_____
Seth A. Safier, Esq.
Marie McCrary, Esq.
Hayley Reynolds, Esq.
100 Pine Street, Suite 1250
San Francisco, CA 94111

# EXHIBIT A

### Exhibit A

| Product | Flavor | Claim(s) |
|---|---|---|
| Super Puffs | Strawberry & Beet | 24mg choline |
| Super Puffs | Blueberry with Purple Sweet Potato | 24mg choline |
| Super Puffs | Mango & Sweet Potato | 24mg choline |
| Super Puffs | Spinach & Apple | 24mg choline |
| Stage 3 Baby Food Pouch | Carrot, Spinach, Turkey, Corn, Apple & Potato | 3g Protein |
| Stage 3 Baby Food Pouch | Carrot, Sweet Potato, Corn, Pea, & Chicken | 3g Protein |
| Stage 3 Baby Food Pouch | Carrot, Chickpea, Pea, Beef & Tomato | 3g Protein |
| Mighty Protein & Fiber Baby Food Pouch | Banana, White Bean, Strawberry, & Chia | 3g Protein<br>3g Fiber<br>200mg Omega-3 ALA from Chia |
| Mighty Protein & Fiber Baby Food Pouch | Pear, White Bean, Blueberry, Date & Chia | 3g Protein<br>4g Fiber<br>200mg Omega-3 ALA from Chia |
| Mighty Protein & Fiber Baby Food Pouch | Banana, White Bean, Sunflower Seed Butter & Chia | 3g Protein<br>2g Fiber<br>200mg Omega-3 ALA from Chia |
| Mighty Veggie Baby Food Pouch | Sweet Potato, Apple, Banana, Carrot | 2g Fiber<br>100mg Omega-3 ALA rom Chia |
| Mighty Veggie Baby Food Pouch | Zucchini, Apple, Watermelon & Barley | 100mg Omega-3 ALA from Chia |
| Mighty Veggie Baby Food Pouch | Spinach, Grape, Apple & Amaranth | 100mg Omega-3 ALA from Chia |
| Mighty Veggie Baby Food Pouch | Carrot, Pear, Pomegranate & Oats | 100mg Omega-3 ALA from Chia |
| Mighty 4 Baby Food Pouch | Mango & Pineapple, White Bean, Butternut Squash, Oats | 2g Protein<br>2g Fiber<br>100mg Omega-3 ALA from Chia |
| Mighty 4 Baby Food Pouch | Sweet Potato, Bana & Passion Fruit, Greek Yogurt & Oats | 3g Protein<br>2g Fiber<br>100mg Omega-3 ALA from Chia |
| Mighty 4 Baby Food Pouch | Strawberry Banana, Greek Yogurt, Kale, Oat & Amaranth | 3g Protein<br>2g Fiber |

| Product | Flavor | Claim(s) |
|---|---|---|
| | | 100mg Omega-3 ALA from Chia |
| Mighty 4 Baby Food Pouch | Banana, Blueberry, Sweet Potato, Carrot, Greek Yogurt & Millet | 2g Protein<br>2g Fiber<br>100mg Omega-3 ALA from Chia |
| Mighty 4 Baby Food Pouch | Pear, Cherry, Blackberry, Strawberry, Black Bean, Spinach & Oat | 2g Protein<br>3g Fiber<br>100mg Omega-3 ALA from Chia |
| Mighty 4 Baby Food Pouch | Apple, Blackberry, Purple Carrot, Greek Yogurt & Oat | 2g Protein<br>2g Fiber<br>100mg Omega-3 ALA from Chia |
| Mighty 4 Baby Food Pouch | Banana, Peach, Pumpkin, Carrot, Greek Yogurt & Oat | 2g Protein<br>2g Fiber<br>100mg Omega-3 ALA from Chia |
| Mighty 4 Baby Food Pouch | Banana, Kiwi, Spinach, Greek Yogurt & Barley | 2g Protein<br>2g Fiber<br>100mg Omega-3 ALA from Chia |
| Mighty 4 Baby Food Pouch | Guava, Pomegranate, Black Bean, Carrot, Oat | 3g Protein<br>4g Fiber<br>100mg Omega-3 ALA from Chia |
| Mighty Morning Baby Food Pouch | Banana, Blueberry, Oat & Quinoa | 2g Protein<br>2g Fiber |
| Mighty Morning Bar | Apple Cinnamon | 80mg Omega-3 ALA from Chia & Flax |
| Mighty Morning Bar | Blueberry Lemon | 80mg Omega-3 ALA from Chia & Flax |
| Mighty Nut Butter Bar | Almond Butter | 70mg Omega-3 ALA from Chia |
| Mighty Nut Butter Bar | Peanut Butter | 70mg Omega-3 ALA from Chia |
| Applesauce Mashups | Blueberry & Carrot | Good Source of Vit. C |
| Applesauce Mashups | Carrot & Mango | Good Source of Vit. C |
| Applesauce Mashups | Strawberry & Beet | Good Source of Vit. C |
| Applesauce Mashups | Strawberry & Banana | Good Source of Vit. C |
| Super Smoothie Nutrient-Dense Blend | Pear, Sweet Potato, Spinach, Blueberry, Bean & Oat | 4g Fiber<br>100mg Omega-3 ALA from Chia<br>7 Essential Nutrients<br>Nutrient-Dense Blend<br>We developed the Super Smoothie to fuel your little one |

| Product | Flavor | Claim(s) |
|---------|--------|----------|
|  |  | (and others!) with a nutritious blend of fruits and veggies. Exposure to key nutrients in the first 1000 days is critical for a child's development. |
| Super Smoothie Nutrition Blend[1] | Apple, Carrot & Spinach with Beans & Oats | 2g Protein<br>3g Fiber<br>Omega-3s from Chia<br>Organic Essential Nutrition Blend/Organic Nutritious Blend |

[1] Plaintiff is aware of two versions of the label for this product. One included a protein claim and the other did not. The implied health claim also varied slightly between the two versions.

# EXHIBIT B

1

2          I, Raphael Paschoal, declare:

3          1.      I am a Plaintiff in this action. If called upon to testify, I could and would

4   competently testify to the matters contained herein based upon my personal knowledge.

5          2.      I submit this Declaration pursuant to California Code of Civil Procedure section

6   2215.5 and California Civil Code section 1780(d).

7          3.      I reside in Berkeley, California. I purchased Plum Organics products for my

8   children when they were under the age of two, including, the Mighty 4, Strawberry, Banana,

9   Greek Yogurt, Kale, Amaranth and Oat baby food pouches; Mighty Veggie Spinach, Grape,

10  Apple, and Amaranth baby food pouches; and Mighty Veggie Zucchini, Apple, Watermelon, and

11  Barley baby food pouches. I purchased the products from Amazon and grocery stores in Berkeley,

12  California.

13         I declare under penalty of perjury under the laws of California that the foregoing is true

14  and correct.

15         Executed this 9th day of September 2021, in Berkeley, California.

16

17                                                      DocuSigned by:

18  
                                                        D7BD7ECF62C947A...
19                                                      Raphael Paschoal

20

21

22

23

24

25

26

27

28

DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION