UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL PASCHOAL, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>CAMPBELL SOUP COMPANY, et al.,<br><br>    Defendants. | Case No. 21-cv-07029-HSG<br><br>**ORDER GRANTING DEFENDANT CAMPBELL'S MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART DEFENDANT SUN-MAID AND PLUM'S MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 36, 38 |

Pending before the Court are two motions to dismiss. Defendant Campbell Soup Company ("Campbell") moves to dismiss, briefing for which is complete. *See* Dkt. Nos. 36, 53, 55. Defendants Sun-Maid Growers of California ("Sun-Maid") and Plum, PBC ("Plum") also move to dismiss, briefing for which is complete. *See* Dkt. Nos. 38, 52, 56. The Court finds these matters appropriate for disposition without oral argument and the matters are deemed submitted. *See* Civil L.R. 7-1(b). For the reasons discussed below, the Court **GRANTS** Defendant Campbell's motion to dismiss and **GRANTS IN PART AND DENIES IN PART** Defendants Sun-Maid's and Plum's motion to dismiss.

**I. BACKGROUND**

    **A. Factual Background**

According to the First Amended Complaint, Defendants produce and sell baby food pouches intended for children 6 months and up under the brand name "Plum Organics." *See* Dkt. No. 24 ("FAC") ¶¶ 16-17, 34-36. Plaintiffs allege that Defendant Sun-Maid acquired the Plum Organics brand from Defendant Campbell in May 2021, and that Defendant Campbell had acquired the brand in May 2013. *Id.* at 2 n.1.

Plaintiffs Rafael Paschoal, Lisa Chong, and Adina Ringler are consumers in California who allege that they were deceived into buying Defendants' products and paying a premium for them. *Id.* ¶¶ 4-7, 53, 60, 66. Plaintiffs allege that Food and Drug Administration ("FDA") regulations prohibit companies from making any "nutrient content claims" on food packaging "intended specifically for use by infants and children less than 2 years of age." *See id.* ¶ 23. Plaintiffs allege that Defendants' "Plum Organics" baby food pouches (the "Products") are intended for children under two years old and that the product packaging includes unlawful nutrient content claims. *Id.* ¶¶ 16-17; *see also* Dkt. No. 27-1 Ex. A to FAC. Plaintiffs assert that front-label statements on Product packaging such as "3g Protein," "4g Fiber," and "200mg Omega-3 ALA from Chia" are nutrient content claims, and are therefore not allowed to be included on products intended for children less than two years old. FAC ¶¶ 20-22. As further examples of what they allege to be unlawful nutrient content claims on the Products, Plaintiffs cite the statements: "Good Source of Vit. C," "Nutrient-Dense Blend," and "Exposure to key nutrients in the first 1000 days is critical for a child's development," among others. Dkt. No. 27-1 Ex. A to FAC.

Plaintiffs allege that "Defendants' advertising and labeling of the Products with express and implied nutrient content claims is unlawful, misleading, deceptive, and intended to induce consumers to purchase the Products at a premium price." FAC ¶ 22. Plaintiffs further allege that "[t]hese claims deceive and mislead reasonable consumers into believing that the Products will provide more benefits than their competitors, and induces parents to purchase the Products despite a lack of evidence that an increased intake for the nutrients advertised are appropriate or recommended for infants and toddlers less than two years of age." *Id.*

Plaintiffs bring causes of action under under California's Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*), False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq.*), and Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*) as well as for common law fraud, deceit and/or misrepresentation and for unjust enrichment.

**B.   Regulatory Background**

The FDA regulates what a manufacturer can include on food packaging. In 21 C.F.R. §

2

101.13, the FDA lists general principles regulating nutrient content claims—claims that expressly or implicitly characterize the level of a nutrient. *See* 21 C.F.R. § 101.13(b). Within that list of general principles, the FDA forbids the making of any nutrient content claims "on food intended specifically for use by infants and children less than 2 years of age," with some exceptions set by regulation. 21 C.F.R. § 101.13(b)(3). California incorporates the FDA requirements as state requirements through the Sherman Law. Cal. Health & Safety Code § 110100 ("All food labeling regulations and amendments to those regulations . . . in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state.").

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Federal Rule of Civil Procedure 9(b) heightens these pleading requirements for all claims that "sound in fraud" or are "grounded in fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation omitted); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). The Ninth Circuit has

interpreted Rule 9(b) to require that allegations of fraud are "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (quotation marks and citation omitted).

In short, a fraud claim must state "the who, what, when, where, and how" of the alleged conduct, *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a] statement or omission complained of was false and misleading." *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Ronconi v. Larkin,* 252 F.3d 423, 429 & n.6 (9th Cir. 2001). "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

## III. DISCUSSION

### A. Proper Defendants

As an initial matter, Defendants Campbell and Sun-Maid contend that they are not proper defendants because Plaintiffs do not allege how they were involved, other than being Defendant Plum's parent companies, or allege facts sufficient to pierce the corporate veil. Dkt. Nos. 36 at 2-5, 38 at 13-14.[1]

"It is a general rule that a parent corporation and its subsidiary will be treated as separate legal entities." *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1192 (N.D. Cal.

---

[1] Defendant Campbell requests that the Court take judicial notice of state incorporation documents (Exhibits A-C), communications from the United States Patent and Trademark Office (Exhibit D), Campbell's Form 10-Q filed with the United States Securities and Exchange Commission ("SEC") for the quarterly period ending on May 2, 2021 (Exhibit E), and Campbell's Form 8-K filed with the SEC on June 9, 2021 (Exhibit G). Dkt. No. 37; *see also* Dkt. No. 36 (Exhibits A-G). Plaintiffs do not object to Defendant Campbell's request for judicial notice, and in fact rely on the documents in their opposition. *See* Dkt. No. 53 at 4-6. With the exception of Exhibit D, the Court finds that the documents are publicly available documents that are not subject to reasonable dispute, and **GRANTS** Defendant Campbell's request for judicial notice as to Exhibits A-C, E, and G. *See* F.R.E. 201(b). Exhibit D appears to be an email sent from a "USPTO.GOV" to "ipmail@gpmlaw.com." Such an email is not an "undisputed matter of public record," and the Court therefore **DENIES** Defendant Campbell's request for judicial notice as to Exhibit D. *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).
Defendants Sun-Maid and Plum request that the Court take judicial notice of state incorporation documents (Exhibits 1 and 2). Dkt. No. 38-7. Plaintiffs did not file any objection. The Court finds that the documents are publicly available documents that are not subject to reasonable dispute, and **GRANTS** Defendants Sun-Maid's and Plum's request for judicial notice as to Exhibits 1 and 2. *See* F.R.E. 201(b).

1   2009). Beyond alleging that Defendants Campbell and Sun-Maid "acquired the Plum Organics
2   brand," the FAC does not specify what role either of these Defendants had or has in the production
3   and marketing of the Products. As other courts in this district have found, generic and conclusory
4   allegations against a parent company based on a subsidiary's conduct are not sufficient to state a
5   claim. *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1133 (N.D. Cal. 2013) (dismissing
6   "common scheme" allegations against a parent company as "wholly generic and conclusory");
7   *Wilson v. Frito-Lay North America, Inc.*, No. 12-1586 SC, 2013 WL 1320468, at *3-4 (N.D. Cal.
8   April 1, 2013) (dismissing claims against a parent company because the plaintiffs "never explain
9   exactly how PepsiCo, as Frito-Lay's parent company, is liable for Frito-Lay's activity").

10   "[V]arious theories—including the alter ego doctrine and principal-agent relationships—
11   may provide a basis for piercing the corporate veil that separates a parent from its formally distinct
12   subsidiary." *Gustavson*, 961 F. Supp. 2d at 1133. In opposition to the motions to dismiss,
13   Plaintiffs point to websites, financial statements and other sources in an attempt to show a close
14   relationship between Defendants Campbell and Plum and Defendants Sun-Maid and Plum. *See*
15   Dkt. Nos. 53 at 5-6, 52 at 4-5. However, Plaintiffs did not plead anything about these sources or
16   allegations in the FAC, and the Court will not consider these new allegations made in Plaintiffs'
17   opposition. *See Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 n. 1 (9th Cir.1998)
18   ("[A] court may not look beyond the complaint to . . . a memorandum in opposition to a
19   defendant's motion to dismiss.").

20   For these reasons, the Court **GRANTS** Defendant Campbell's motion, and dismisses all
21   claims against it with leave to amend. *See* Dkt. No. 36.[2] The Court also **GRANTS** Defendants
22   Sun-Maid's and Plum's motion on this ground, and dismisses all claims against Defendant Sun-
23   Maid with leave to amend. *See* Dkt. No. 38.

---

[2] The Court does not address Defendant Campbell's argument that Plaintiffs' claims are preempted under *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001), because the Court finds that Plaintiffs have failed to state a claim against this defendant. However, the Court notes that it has previously rejected a similar argument in *Vassigh v. Bai Brands LLC*, No. 14-cv-05127-HSG, 2015 WL 4238886, at *4 (N.D. Cal. July 13, 2015), and any future arguments along this line should address the Court's reasoning in *Vassigh*.

5

**B.      Standing**

Defendant Plum contends that Plaintiffs lack standing because they fail to allege a plausible theory of injury. To pursue a case, a plaintiff must establish that he or she has standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). One of the essential elements of standing is that "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Id.* (citations and quotations omitted). For an injunctive relief claim, a plaintiff must show "a sufficient likelihood that he will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). In the labeling context, the Ninth Circuit has held that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Davidson v. Kimberly-Clark Corp.* 889 F.3d 956, 969 (2018) (citation omitted). As examples of potential future harm, the Ninth Circuit noted that a consumer may "be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to" or "she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonable, but incorrectly, assume the product was improved." *Id.* at 969-970.

Defendant Plum argues that Plaintiffs lack standing to pursue either a damages or an injunctive relief claim. With respect to damages, Plum argues that Plaintiffs suffered no injury because they "do not dispute that the statements of '3 g protein' and '4 g fiber' are truthful." Dkt. No. 38 at 12-13; Dkt. No. 56 at 13. And with respect to injunctive relief, Plum contends, relying heavily on *In re Coca-Cola Prods. Mktg. and Sales Prac. Litig.*, No. 20-15742, 2021 WL 3878654 (9th Cir. Aug. 31, 2021), that Plaintiffs fail to meet the *Davidson* standard because they allege a "bare procedural violation" and "there can be no injury merely because the identical truthful information applies in two places on the label rather than one." Dkt. No. 38 at 13.

The Court finds that Plaintiffs have adequately alleged standing on both grounds. As to the damages claim, Plaintiffs allege more than a "bare procedural violation" because they allege

they paid a premium or would not have otherwise purchased the Products but for the challenged representations. Plaintiffs allege that they purchased the Products at a premium because the inclusion of nutrient content claims led them to believe the Products had more health benefits than comparable products that did not include such claims. *See* FAC ¶¶ 37, 44, 46, 53, 60, 66. Plaintiffs further allege that "[h]ad Defendants not unlawfully and misleadingly labeled their Products, [they] would not have purchased them or, at a very minimum, [they] would have paid less for the Products." *Id.* ¶¶ 54, 61, 67. At this stage, Plaintiffs' theory of injury is plausibly and adequately pled, given that the FDA's strict regulation of nutrient content claims means that the relevant question is not just whether the information is literally true, but also whether the placement of that information misleads consumers regarding its significance from a nutritional standpoint. *See id.* ¶ 22. Defendant's suggestion that all that is at issue here is an "abstract interest in compliance with labeling requirements," Dkt. No. 38 at 13, because the location of the representations doesn't matter is inconsistent with the allegations in the complaint. *See Hawkins v. Kroger Co.*, 906 F.3d 763, 769, 771 (9th Cir. 2018) (finding that requirement that manufacturer include certain information within the Nutrition Facts Panel "did not give the manufacturer license to make the same claim elsewhere on the product," and concluding that plaintiff adequately alleged standing where she "alleged that she relied on the label's misrepresentation and would not have purchased the product without those misrepresentations").

As to the injunctive relief claim, Plaintiffs allege a sufficient likelihood of future harm because they assert that they "continue[] to desire to purchase baby and toddler food products" and that "[i]f the Products did not contain unlawful and misleading labels, [they] would likely purchase the Products again in the future." *Id.* ¶¶ 55, 62, 68. This is enough under *Davidson*.[3]

The Court **DENIES** Defendant Plum's motion to the extent it is based on lack of standing.

---

[3] *In re Coca-Cola* obviously is not binding, and even if it is viewed as persuasive authority, the case does not support Plum's injuctive relief standing challenge. The allegations here are unlike those in *In re Coca-Cola*, where some plaintiffs alleged only that "if [the product] were properly labeled, they would consider purchasing it" and others had "no stated desire to purchase [the product] in the future." 2021 WL 3878654 at *2-3.

### C. Primary Jurisdiction Doctrine

Defendant Plum urges the Court to dismiss or stay this case under the primary jurisdiction doctrine. Dkt. No. 38 at 9-12.

"The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency . . . [and] is to be used only if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency, and if protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) (internal quotations and citations omitted).

As Plaintiffs note, courts routinely decline to invoke the primary jurisdiction doctrine in food labeling cases because courts are well-equipped to assess allegations that a defendant has violated FDA regulations. *See Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1124 (N.D. Cal. 2010); *Victor v. R.C. Bigelow, Inc.*, No. 13-cv-02976-WHO, 2014 WL 1028881, at *12 (N.D. Cal. March 14, 2014); Dkt. No. 52 at 10. That is especially true in cases like this one, where the allegations do not involve technical or scientific issues, but rather allegations that the label is misleading. *Chacanaca*, 752 F. Supp. 2d at 1124 (noting that "the issues that survive defendant's preemption arguments . . . do not entail technical questions or require agency expertise"); *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 898-99 (N.D. Cal. 2012) ("Plaintiff's allegations of deceptive labeling do not require the expertise of the FDA to be resolved in the courts, as every day courts decide whether conduct is misleading." (citations and quotations omitted)). The Court **DENIES** the motion to dismiss on this ground, and declines to invoke the primary jurisdiction doctrine.

### D. Nutrient Content Claims

Defendant Plum argues that Plaintiffs fail to state a claim because the labels at issue are not nutrient content claims, and alternatively argue that even if the labels are nutrient content claims, they are allowed under Section 101.13(c). Dkt. No. 38 at 4-9.

#### i. The statements at issue are nutrient content claims.

1    A nutrient content claim can be express or implied. *See* 21 C.F.R. § 101.13(b). "An expressed nutrient content claim is any direct statement about the level (or range) of a nutrient in the food, e.g. 'low sodium' or 'contains 100 calories.'" 21 C.F.R. § 101.13(b)(1).[4] "An implied nutrient content claim is any claim that: (i) Describes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g. 'high in oat bran'); or (ii) Suggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient (e.g. 'healthy, contains 3 grams (g) of fat')." 21 C.F.R. § 101.13(b)(2).

In *Hawkins*, the Ninth Circuit explained that the statements "No Trans Fat" and "0g Trans Fat" were "expressed" nutrient content claims because they made a direct statement about the level of trans fat in the food. 906 F.3d at 770-71. Defendant argues that *Hawkins* does not control because it claims that the problem with the product statements there was that they involved rounding (i.e., labeling a product "0g Trans Fat" when it actually had some amount of trans fat). Dkt. No. 56 at 8. But nothing in *Hawkins* suggests that its reasoning was so limited. The Ninth Circuit first considered whether the statements were nutrient content claims. In determining that they were, the court did not rely on whether the figures were rounded or the statements were false, but instead pointed out that the defendant made a "direct statement about the level" of nutrient in the food. *See id.* at 771-72. It was only after the statements were determined to be nutrient content claims that the court examined whether the statements were unlawful by considering whether they "in any way implicitly characteriz[ed] the level of the nutrient in the food" or were

---

[4] Plaintiffs request that the Court take judicial notice of two documents Plaintiffs assert were formerly published as FDA guidance. *See* Dkt. No. 54. Neither document is currently available on the FDA website, and it is unclear whether they would be relevant to the issue at hand because one is "A Guide for Restaurants and Other Retail Establishments" from 1995 and the other is "A Labeling Guide for Restaurants and Other Retail Establishments Selling Away-From-Home Foods" from 2008. *Id.* Defendants object to Plaintiffs' request to take judicial notice of the 1995 publication because Defendants have not been able to verify its authenticity. *See* Dkt. No. 58 at 1-2. Plaintiffs represent that they obtained it through "an archive available online through Google," *see* Dkt. No. 54 at 1, but Defendants assert that they were not able to find it online, *see* Dkt. No. 58 at 1-2. Given the authenticity and reliability issues with the 1995 publication, the fact that both publications are no longer published on the FDA website, and the fact that the publications were intended for audiences different than the relevant ones in this case, the Court does not rely on these sources in making its decision and **DENIES** Plaintiffs' request for judicial notice.

false or misleading in any respect. *See id.*

The Court finds that the statements at issue here, such as "3g Protein" and "4g Fiber," are express nutrient content claims. They are direct statements about the level of nutrient in the food, and are similar to the "contains 100 calories" example included in the regulation. *See* 21 C.F.R. § 101.13(b)(1). Plaintiffs also allege that indirect statements, such as "Nutrient-Dense Blend" and "Exposure to key nutrients in the first 1000 days is critical for a child's development," are made in conjunction with the direct statements on the Products. *See* Dkt. No. 27-1 at 3. These statements are implied nutrient content claims because they suggest that the product's nutrient content may be useful in maintaining healthy dietary practices. *See Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1078 (N.D. Cal. 2017) ("The FDA has issued guidance that establishes that statements such as 'nutritious,' 'wholesome,' 'best choice,' and 'good for you' are also implied nutrient content claims when stated next to an 'explicit or implicit claim or statement about a nutrient.'" (citation omitted)).

Defendant argues that the statements at issue here are not nutrient content claims because they do not "characterize" the nutrient level, in the way that "only 200 mg of sodium" or "high fiber" does. *See* Dkt. No. 38 at 4-8. Defendant cites FDA guidance which states:

> Nutrient content claims describe the level of a nutrient in the product, using terms such as free, high, and low, or they compare the level of a nutrient in a food to that of another food, using terms such as more, reduced, and lite. An accurate quantitative statement (e.g., 200 mg of sodium) that does not otherwise "characterize" the nutrient level may be used to describe the amount of a nutrient present. However, a statement such as "only 200 mg of sodium" characterizes the level of sodium by implying that it is low.

FDA, Label Claims for Conventional Foods and Dietary Supplements, available at https://www.fda.gov/food/food-labeling-nutrition/label-claims-conventional-foods-and-dietary-supplements; *see* Dkt. No. 38-4.[5] Defendant argues that under this guidance the statement "3g

---

[5] Defendants Sun-Maid and Plum request that the Court take judicial notice of three FDA guidance documents: the online publication just cited (Exhibit 3), food labeling regulations published at 56 FED. REG. 60421-78 on November 27, 1991 (Exhibit 4), and food labeling regulations published at 58 FED. REG. 2302-2426 on January 6, 1993 (Exhibit 5). Dkt. No. 38-7. Plaintiffs did not file any objection. The Court finds that these are publicly available documents that are not subject to reasonable dispute, and **GRANTS** Defendants Sun-Maid's and Plum's request for judicial notice as to Exhibits 3, 4, and 5. *See* F.R.E. 201(b).

protein" is not a nutrient content claim because it is a quantitative statement without any further description or characterization. *See* Dkt. No. 38 at 5-6. Plaintiffs point out that the guidance states that an accurate quantitative statement can be made so long as it does not "otherwise 'characterize'" the nutrient content level, suggesting that the quantitative statement is itself a characterization of the nutrient content level. *See* Dkt. No. 52 at 7.

Whatever import the Court might assign to the FDA's online guidance, where as here it appears to conflict with the plain language of the regulation, the plain language controls. *See Hawkins*, 906 F.3d at 771-72 (expressing the view that "the FDA's food regulations promulgated under the NLEA are 'inconsistent and incomprehensive'"). On this point, the Court agrees with the conclusion reached by the court in a recent case in this district involving the same issue presented here. *See Davidson v. Sprout Foods Inc.*, No. 22-cv-01050-RS, 2022 WL 2668481 (N.D. Cal. July 11, 2022) (considering allegations that statements such as "3g of Protein" and "4g of Fiber" were unlawful nutrient content claims when made on baby food). The court in *Davidson* rejected the defendant's argument that nutrient content claims must "characterize" the nutrient level and concluded that "3g of Protein" is a nutrient content claim based on the "clear text of the regulation" and Ninth Circuit decisions. *Id.* at 6-8. The result is the same here: the statements at issue are nutrient content claims.

> ii. **Plaintiffs plausibly allege that the nutrient content claims at issue may not be made on products marketed to children under the age of two.**

Defendant Plum contends that even if the statements at issue are nutrient content claims, they are lawful under Part 101 of the regulations.

Part 101 is under "Subchapter B – Food for Human Consumption" and is titled "Food Labeling." 21 C.F.R. § 101. It contains both broad principles (like the general rules for nutrient content claims at § 101.13) and specific provisions (such as when a nutrient content claim can say a product is "unsalted," *see* § 101.61). Generally, food product packaging can include nutrient content claims as long as they comply with Part 101. However, products intended for infants are carved out as a special case. If the food is meant to be consumed by a child under the age of two, the regulations prohibit the inclusion of any nutrient content claims on the product's packaging

11

"unless *specifically* provided for in parts 101, 105, or 107." 21 C.F.R. § 101.13(b) (emphasis added). Throughout Part 101, there are regulations that are clearly intended to permit certain types of nutrient content claims on food for infants. For example, § 101.60(c)(2) outlines when the term "no sugar added" can be used, and § 101.60(c)(4) states that "[t]he claims provided for in paragraph . . . (c)(2) of this section may be used on labels . . . that are intended specifically for use by infants and children less than 2 years of age." *See also, e.g.*, 21 C.F.R. § 101.61(c)(3) (defining when the word "unsalted" can appear on "food intended specifically for infants and children less than 2 years of age").

Defendant argues that the baby food labels at issue here are permissible because they comply with § 101.13(i)(3). Section 101.13(i)(3) states that labels "may contain a statement about the amount or percentage of a nutrient if . . . [t]he statement does not in any way implicitly characterize the level of the nutrient in the food and it is not false or misleading in any respect." However, unlike other regulations in Part 101 that specifically detail what labels are permissible for infants or children under the age of two, section 101.13(i)(3) contains no such reference. If, as Defendant argues, any statement allowed under Part 101 may also be made on food for children under two, it would negate the purpose of having a specific provision focused on children's product labeling. The only logical reading of the regulatory structure is that while accurate statements about the amount of a nutrient may be allowed on products intended for people *over* the age of two, section 101.13(i)(3) is not an exception to the rule that nutrient content claims may not be made on food intended for infants and children *under* the age of two. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 35 (2003) (" A statutory interpretation that renders another statute superfluous is of course to be avoided."); *Ariz. State Bd. for Charter Sch. v. U.S. Dep't of Educ.*, 464 F.3d 1003, 1008 (9th Cir. 2006) ("[W]ell-accepted rules of statutory construction caution us that 'statutory interpretations which would produce absurd results are to be avoided.'" (citation omitted)).

The Court **DENIES** Defendant Plum's motion to dismiss on this ground, and finds that Plaintiffs adequately allege that the Products contain nutrient content claims, which may not be included on food intended for infants and children less than two years of age.

12

### IV. CONCLUSION

The Court **GRANTS** Defendant Campbell's motion to dismiss with leave to amend. *See* Dkt. No. 36. The Court **GRANTS IN PART AND DENIES IN PART** Defendants Sun-Maid's and Plum's motion to dismiss. *See* Dkt. No. 38. Defendant Sun-Maid is dismissed with leave to amend, and the Court denies Defendants' requests to dismiss for lack of standing, on the basis of primary jurisdiction, and for failure to state a claim. Any amended complaint must be filed within 28 days of the date of this order.

The Court **SETS** a telephonic case management conference for November 15, 2022 at 2:00 p.m. The Court further **DIRECTS** the parties to submit a joint case management statement by November 8, 2022. All counsel shall use the following dial-in information to access the call:

Dial-In:  888-808-6929

Passcode:  6064255

For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines.

**IT IS SO ORDERED.**

Dated: 9/15/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge