**GUTRIDE SAFIER LLP**
SETH A. SAFIER (SBN 197427)
seth@gutridesafier.com
MARIE A. MCCRARY (SBN 262670)
marie@gutridesafier.com
HAYLEY REYNOLDS (SBN 306427)
hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

**WINSTON & STRAWN LLP**
Christopher M. Murphy (*pro hac vice*)
cmmurphy@winston.com
35 W. Wacker Drive
Chicago, IL 60601-9703
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Dana L. Cook-Milligan (SBN: 301340)
dlcook@winston.com
California Street, 34th Floor
San Francisco, CA 94111-5840
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

*Attorneys for Defendant Plum, PBC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL PASCHOAL, LISA CHONG, and ADINA RINGLER as individuals, on behalf of themselves, the general public and those similar situated,<br><br>Plaintiffs,<br><br>v.<br><br>CAMPBELL SOUP COMPANY, SUN-MAID GROWERS OF CALIFONIA, and PLUM, PBC<br><br>Defendants. | CASE NO. 21-cv-07029-HSG<br><br>**STIPULATION RE ELECTRONICALLY STORED INFORMATION** |

STIPULATED PROTECTIVE ORDER; Case No. 4:21-cv-08566

## 1. PURPOSE AND DEFINITIONS

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure ("Federal Rules"), this Court's Guidelines for the Discovery of Electronically Stored Information ("Guidelines"), and any other applicable orders and rules. Except as otherwise agreed by the Parties, technical terms used herein and in discovery requests and responses shall follow or be defined by the "The Sedona Conference Glossary: E-Discovery and Digital Information Management" (Fifth Edition).

## 2. COOPERATION

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with the Guidelines, including with respect to proportionality of discovery, reasonable efforts to ensure discovery of important information, and early and prompt communication regarding discovery issues.

## 3. ESI LIAISONS

On or before November 30, 2022, the Parties will identify persons knowledgeable about and who are responsible for discussing ESI discovery with each other. The Parties may subsequently substitute such designated persons or identify additional persons knowledgeable about ESI. Such persons will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, harvesting/collection, search methodologies, and production of ESI in this matter. These persons will be available as reasonably needed to confer about ESI and to help resolve disputes without court intervention.

## 4. PRESERVATION

The Parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that:

(a)     In general, the Parties agree that ESI created or received before January 1, 2017, is not generally subject to preservation and harvesting for all discovery purposes, unless a party is aware of ESI created before January 1, 2017, that is likely to contain relevant and discoverable information and that is actively maintained;

(b) On a date to be agreed upon by the Parties, but no later than 14 days after Defendants file their Answers, the Parties will exchange (i) a list of the types of ESI they believe should be preserved, including non-custodial sources, *e.g.*, sharepoints, databases, e-mail servers, shared drives, etc., (ii) the number and identity of custodians, including the general job titles or descriptions of custodians, for whom they believe ESI should be preserved, *e.g.*, "Senior Marketing Manager," "Lead Product Manager," and "Director – Customer Service;" and (iii) a general description of the default time periods for preservation for the categories of data above. The Parties shall meet and confer in order to add, remove, or modify custodians, data sources, and search/harvest methodologies as reasonably necessary.

(c) The Parties will meet and confer and use best efforts to agree on data sources that are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), and ESI from these sources will either not be preserved or be preserved but not searched, reviewed, or produced. The Parties agree that there is no need to preserve or collect ESI from the following sources, which are deemed to not likely contain relevant information and to be not reasonably accessible:

    i. random access memory (RAM), temporary files, or other ephemeral data;

    ii. on-line access data such as temporary internet files, histories, caches, cookies, etc.;

    iii. data in metadata field that are frequently updated automatically, such as last opened dates.

    iv. Shadowed, damages, residual, "slack," "fragmented," or "unallocated" data;

    v. data stored on photocopiers, scanners, and/or fax machines;

    vi. data maintained in any electronic backup system for the purpose of system recovery or information restoration, including but not limited

to, system recovery backup tapes or other media, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten, or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy;

    vii.  operating system files, executable files;

    viii.  electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report; and

    ix.  structural files not material to individual file contents that do not contain substantive content (e.g., .CSS, .XSL, .DTD, etc.).

The Parties further agree that there is no need, at this time, to search ESI from the following sources (although the Parties must take reasonable steps to preserve such ESI if potentially responsive), but all Parties reserve the right to request to have this ESI searched if some reason emerges for believing that a particular source contains unique relevant information:

    x.  Any other source a Party has identified to the other Party as not reasonably accessible pursuant to Federal Rule of Civil Procedure 26(b)(2)(B).

    xi.  Call logs, data, voicemails, text and/or instant messages, or other media stored on personal computers or personal devices (including mobile phones) of the corporate party's employees. The Parties further agree that there is no need to modify or suspend the procedures used by them in the ordinary course of business to backup data and systems for disaster recovery and similar purposes related to

continuity of operations. The Parties are not required to take any such backup media out of the ordinary rotation.

(d) As additional data sources are identified as a result of investigation and/or discovery, the Parties may identify additional data sources that may or may not need to be searched or preserved pursuant to the foregoing. The Parties will meet and confer about preserving such ESI as any additional data sources are identified.

5. **SEARCH**

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.  The Parties agree to disclose the methodology used to produce ESI.

Nothing in this Order shall be construed as precluding a producing party from performing a privilege review to determine if certain documents should be withheld.

6. **PRODUCTION FORMATS**

With the exception of spreadsheets, presentation files, multi-media files and other native files that cannot be converted to image files, the Parties shall produce all relevant, responsive, and non-privileged ESI as Bates-stamped single-page 1-bit TIFF images with a DAT load file that enables the document to be uploaded and viewed using standard litigation support software in accordance with the provisions below. Unless excepted below, single page, 1-bit, black and white Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the quality of the original, the producing party shall provide a higher quality TIFF image (where possible) or the native or original file.

(a) *Production Media*. The Parties shall produce documents in an encrypted format through electronic means, such as external hard drives, secure file sharing methods (*e.g.*, FTP), or readily accessible computer or electronic media (*e.g.*, CDs, DVDs) (collectively, "Production Media"), with explicit decryption instructions. Productions shall have the following four

directories: (1) IMAGES for the images; (2) DATA for the .dat and .opt files; (3) TEXT for the extracted text/OCR files; and (4) NATIVES for any native Excel, Powerpoint, multi-media, or other files that cannot be understood reasonably unless displayed in native format. The producing party shall identify: (a) the Responding Party's name; (b) the production date; and (c) the Bates Number range of the materials contained on the Production Media.

      (b)    *Color*. If an original document contains relevant information in color necessary to understand the meaning or content of the document, the document should be produced as color JPG single-page, 300 DPI image with a minimum quality setting as to not degrade the original image.

      (c)    *Unique IDs*. Images shall be produced using a unique file name (*e.g.*, ABC000001.TIFF). The Bates number must appear on the face of the image and not obliterate, conceal, or interfere with any information from the source document. Native files shall be produced using a name that will bear the production number.

      (d)    *Parent-Child Relationships*. Parent-child relationships (association between an attachment and its parent document) shall be preserved. The attachment(s) shall be produced adjacent to the parent document, in terms of Bates numbers, with the first attachment being named with the next sequential number after the parent, and any additional attachment(s) sequentially numbered after that first attachment.

      (e)    *Redactions*. If the Parties are redacting information from a page, they shall electronically "burn" the word "Redacted" onto the page or otherwise clearly indicate a redaction at or reasonably near to the location of the redaction(s), as set forth in the stipulated Protective Order in this matter. If documents that the Parties have agreed to produce in native format need to be redacted, the Parties agree to meet and confer in good faith on how to best produce the documents so that proper formatting and usability are maintained.

      (f)    *Confidentiality Designation*. Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this matter.

   (g) *Metadata Fields*. The Parties shall provide the system generated and metadata fields (the "Production Fields") substantially similar to those set forth in **Exhibit A**.

   (h) *Native Format*. The Responding Party shall produce spreadsheets (*e.g.*, Excel), presentation files (*e.g.*, PowerPoint), and any other materials not readily convertible to TIFF format (*e.g.* three-dimensional design files) in native format. To the extent that they are produced in this action, audio, video, and multimedia files will be produced in native format. If a native file originally had track changes, comments, or other collaborative change features turned on, the TIFF file will display those changes in the converted image file. Native files shall be produced with a link in the NATIVEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in Exhibit A. For each native file produced, the production will include a *.tif image slipsheet indicating the production number of the native file and the confidentiality designation and stating, "File Provided Natively" (or substantially similar). Native files will be produced in a separate folder on the production media. TIFF images of e-mail messages should include the BCC line, if there is a BCC value for the e-mail message in question. Upon request from the receiving party that any files be produced in native format (identified by Bates number), the Parties agree to meet and confer in good faith concerning such requests. A request for such production shall not be unreasonably denied. The Parties agree to meet and confer regarding a protocol for use of native files at depositions, hearings, or trial.

   (i) *Text Files*. For each produced document, a document-level text file shall be provided in addition to the image files (TIFFs). The text of native files should be extracted directly from the native file and each text file will be named using its corresponding beginning bates number (*e.g.*, ABC000001.TXT). For ESI with redacted text, a commercially acceptable technology for Optical Character Recognition ("OCR") shall be used for all scanned, hard copy documents with redactions and electronic documents with redactions.

   (j) *Physical/Hard Copy Documents*. Nothing herein shall relieve the Parties of any obligations they may have to search for responsive Documents in hard copy form. The Parties shall produce documents that exist solely in physical hard-copy format following this ESI Stipulation. The metadata shall indicate document breaks and identify the custodian or non-person

custodial source from whom/where the document was collected. The documents should be logically unitized using reasonable best efforts. The ".tif" files shall be subject to an OCR process. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process. If unitizing hard copy documents or providing OCR text presents an undue burden, or if the burden exceeds the benefit with respect to certain sets of hard copy documents, the producing party is not obligated to unitize and provide OCR text, but the producing party will disclose that fact to the receiving party. The Parties will meet and confer to address instances of undue burden and will work to negotiate an appropriate solution.

(k)     *Databases and Other Structured Data*. To the extent a response to discovery involves production of electronic information stored in a database, the producing party will provide a general description of what information is in the database. The parties shall meet and confer regarding the format for database productions, where necessary.

(l)     *Duplicates*. The Responding Party may use software to identify duplicate documents that are in files of individual or multiple Production Custodians. To the extent there are duplicate documents, the Responding Party need only produce a single copy of a responsive document, unless the Requesting Party reasonably requests the duplicate document for a legitimate reason. Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level only). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. De-duplication should be done across the entire collection (i.e., global level) and the ALL CUSTODIANS fields should list each custodian, separated by a semicolon. To accommodate for rolling productions, for ESI that is removed as a duplicate from earlier productions, the producing party should provide an overlay file along with or within a reasonable time of their final production.

(m)     *Email Threading*. Where multiple email messages are part of a single chain or "thread," a party is only required to produce the most inclusive message ("Last In Time Email") and need not produce earlier, less inclusive email messages or "thread members" that are fully

contained, including attachments and including identical senders and recipients, within the Last In Time Email. Only email messages for which the parent document and all attachments are contained in the Last In Time Email will be considered less inclusive email messages that need not be produced.

**7.     PHASING**

The Parties agree to meet and confer concerning whether the production of responsive ESI should occur in phases, by prioritizing selected sources and/or custodians. This section is not an agreement by the parties to bifurcate discovery for any purpose.

**8.     DOCUMENTS PROTECTED FROM DISCOVERY**

(a)     Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

(b)     The producing party shall also provide a privilege log containing the categories, or fields, of information identified in Exhibit B hereto, to the extent available, unless otherwise agreed in writing or pursuant to a court order. Communications involving a party's outside counsel (including all attorneys, staff or other personnel) that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate. In addition, privileged communications solely concerning other litigation or investigatory matters, whether generated before or after the date the action was commenced, need not be included in a privilege log. In the event there is a privileged communication generated after the date that this litigation commenced that has attachments to it that are responsive, nonduplicative, and not privileged in and of themselves, it is acceptable to produce those documents as though they were loose documents without any reference to the fact that they were part of a privileged communication.

(c) Documents produced with redactions that identify the basis of the redaction (e.g., attorney-client privilege, attorney work product) need not be placed on a privilege log.

9. **MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: October 25, 2022

| | |
|---|---|
| *s/ Hayley Reynolds* | *s/ Dana Cook-Milligan* |
| **GUTRIDE SAFIER LLP** | **WINSTON & STRAWN LLP** |
| Seth A. Safier (Bar No. 197427) | Christopher M. Murphy (*pro hac vice*) |
| seth@gutridesafier.com | cmmurphy@winston.com |
| Marie A. McCrary (Bar No. 262670) | 35 W. Wacker Drive |
| marie@gutridesafier.com | Chicago, IL 60601-9703 |
| Hayley Reynolds (State Bar No. 306427) | Telephone: (312) 558-5600 |
| hayley@gutridesafier.com | Facsimile: (312) 558-5700 |
| 100 Pine Street, Suite 1250 | |
| San Francisco, CA 94111 | Dana L. Cook-Milligan (SBN: 301340) |
| Telephone: (415) 639-9090 | dlcook@winston.com |
| Facsimile: (515) 449-6469 | California Street, 34th Floor |
| | San Francisco, CA 94111-5840 |
| *Attorneys for* | Telephone: (415) 591-1000 |
| *Plaintiffs Rafael Paschoal, Lisa Chong, and Adina Ringler* | Facsimile: (415) 591-1400 |
| | *Attorneys for Defendant Plum, PBC* |

ATTESTATION OF CONCURRENCE IN FILING

In accordance with the Northern District of California Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from each of the signatories who are listed on the signature page.

Dated: October 25, 2022

                                           */s/Hayley Reynolds*
                                           Hayley A. Reynolds

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated:   10/27/2022

_____
HONORABLE JUDGE HAYWOOD S. GILLIAM JR.

**Exhibit A**
**Production Fields**

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| BEGDOC | Bates number assigned to the first page of the document. |
| ENDDOC | Bates number assigned to the last page of the document. |
| BEGATTACH | Bates number assigned to the first page of the parent document in a document family (i.e., should be the same as BEGDOC of the parent document, or PARENTDOC). |
| ENDATTACH | Bates number assigned to the last page of the last child document in a document family (i.e., should be the same as ENDDOC of the last child document). |
| NATIVEFILE | Relative file path of the native file on the production media. |
| ALL CUSTODIANS | Lists primary custodian and each de-duplicated custodian. Delimited by ";" when field has multiple values. |
| CUSTODIAN | Primary owner of the document or file. |
| FROM | Sender of the email. |
| TO | All to: members or recipients, delimited by ";" when field has multiple values. |
| CC | All cc: members or recipients, delimited by ";" when field has multiple values. |
| BCC | All bcc: members or recipients, delimited by ";" when field has multiple values. |
| EMAIL SUBJECT | Subject line of the email. |
| EMAIL DATE TIME RECEIVED | Date AND Time when an email was received. Format MM/DD/YYYY HH:MM:SS AM/PM. |
| EMAIL DATE TIME SENT | Date AND TIME when an email was sent. Format MM/DD/YYYY HH:MM:SS AM/PM |
| ATTACHMENTS | List of filenames of all attachments, delimited by";" when field has multiple values. |
| FOLDERLOC | Original folder path of the produced document. |
| FILENAME | Original filename of the produced document. |
| DOCEXT | Original file extension. |
| DOCTYPE | Name of the program that created the produced document. |
| TITLE | Document title (if entered). |
| AUTHOR | Name of the document author. |
| LAST AUTHOR | Name of the document's last author. [*The parties acknowledge that the Author field may not reflect the true author of the document.*] |

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| DATE TIME CREATED | Date and TIME that a document was created. Format MM/DD/YYYY HH:MM:SS AM/PM<br><br>[*The parties acknowledge that the Date Time Created field may not reflect the date the document was first created due to the ease of change to the field and the technical definition of the field (e.g., the created date reflects the date when the file was created in that particular location on the computer or on the other storage device location).*] |
| DATE TIME LAST MOD | Date and TIME that a document was last modified. Format MM/DD/YYYY HH:MM:SS AM/PM |
| FILESIZE | Original file size in bytes. |
| SHA-1 | SHA1 hash value computed from native file (a/k/a file fingerprint). |
| TIMEZONE | The Timezone that was used for processing the documents (e.g., GMT). |
| CONFIDENTIAL DESIGNATION | The confidential designation (if any) applied to the produced document pursuant to the parties' Protective Order. |
| REDACTED DOCUMENTS | Lists redactions status. It should be populated for each produced record. The values should be: "Y" or "N," or alternatively, "Y" or blank, and used as follows:<br>"Y" – document was produced with redactions<br>"N" or blank – document was not redacted |
| MDHASH | MD5 hash value computed from native file (a/k/a file fingerprint). |

**Exhibit B**
**Privilege Log Fields**

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| PrivLog # (generic number) | Generic field for tracking purposes (i.e. 1, 2, 3). |
| Begin Bates | Beginning Bates number of document. |
| End Bates | Ending Bates number of document. |
| Document Type | General type of record (i.e., Outlook, PDF, PowerPoint Presentation). |
| Family Relationship | Parent, Child, or Standalone. |
| Date | The date of the parent document (for emails, this is date sent; for non-emails, this is date last modified). |
| Author | Author or sender of document (for emails, this is the From field; for non-emails, this is the person who created the file). |
| Recipients | Derived from the To field. |
| Other Recipients | Derived from the CC and BCC fields. |
| Privilege Claimed | Type of privilege claimed (i.e., Attorney-Client or Attorney Client - Work Product, etc.). |
| Description | Description of Privilege Claim. |

AmericasActive:16650529.2